U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
2024 JAN 26 AM 11:00
CLERK
BY LAW
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF VERMONT**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| AND | |
| THE STATE OF VERMONT | **FILED UNDER SEAL** |
| *ex rel.* (Under Seal) | **CASE NO.** 2:24-cv-90 |
| AND KATHY HARGREAVES, | **Pursuant to 31 U.S.C. §§3729 *et seq* and 32 V.S.A. §§632 *et seq*** |
| Relator | |
| vs. | **FALSE CLAIMS ACTS** |
| RATTLEBORO MEMORIAL HOSPITAL, Defendant **(Under Seal)** | **(EXEMPT FROM ECF & VT Odyssey)** |

**FILED UNDER SEAL**

**COMPLAINT AND JURY DEMAND**

1. Relator Kathy Hargreaves, brings this *QUI TAM* action UNDER SEAL, pursuant to the federal False Claims Act, 31 U.S.C. §§ 3729 – 3733, *et seq.*, and the Vermont False Claims Act, 32 V.S.A. § 632, *et seq.*, as amended, on behalf of the United States of America and the State of Vermont against the Brattleboro Memorial Hospital (BMH), a Vermont Not-for-Profit corporation located in Brattleboro, Vermont, for the Defendant's fraudulent claims for monetary reimbursement

from Medicare and Medicaid for fraudulent over-charges for medical services provided to its patients.

## **Nature of the Case**

2. This is a claim to recover damages and civil penalties on behalf of the United States of America and the State of Vermont arising from false statements and false claims made by Defendant BMH by systematically overcharging Medicare and Medicaid.

3. BMH acted to defraud the United States of American and the State of Vermont in violation of the federal and state False Claims Acts, as amended. As more fully delineated below, Defendant knowingly submitted, caused to be submitted or facilitated the submission of false and fraudulent documents and made false and fraudulent representations to the federal and state governments over a period of years. Specifically, Defendant engaged in a scheme to defraud the United States and the State of Vermont by systematically overcharging Medicare and Medicaid. Defendant would, among other fraudulent activities, make a practice of charging Medicare and Medicaid monies used for services that were not rendered or were rendered for other procedures and/or services.

4. BMH acted to defraud the United States of American and the State of Vermont in violation of the federal and state False Claims Acts, as amended.

5. The Relator seeks judgment against the Defendant, through intervention and investigation of the U. S. Department of Justice and Vermont Attorney General and reimbursement from the Defendant for the fraudulent monetary over-charges to the governments and their taxpayers as follows:

6. The Relator is a resident of Farmington, Maine.

7. The Relator was an employee of the Defendant Brattleboro Memorial Hospital ("BMH") from December 7, 2020, until March 2023 as Medical Biller/Trainer and Revenue Integrity Specialist reporting directly to the BMH vice president throughout her tenure.

8. As an employee of Defendants, the Relator was Billing Manager working directly for the BMH vice president for Revenue Cycle and closely with the Revenue Integrity Coding Manager; they were charged with the monitoring and updating Defendant's billing department, physician practices and coding for medical charge reimbursements from Medicare and Medicaid.

9. BMH is a 61-bed not-for-profit hospital located in Brattleboro, Vermont, employing physicians, nurses, support and administrative staff; the institution provides primary and acute medical care to more than 2,000 inpatients each year; its providers perform more than 2,500 surgical procedures a year.

10. BMH provides many medical and related services for area residents in the tri-state area that includes Vermont, Massachusetts and Maine.

11. This is the second such proceeding against the Defendant for similar claims under both of the False Claims Acts; in 2018, BMH paid $1,655,000 to the United States and the state of Vermont to resolve civil claims that it "knowingly" presented or caused to be presented "false claims for payment to Medicare and Medicaid."

**Subject Matter Jurisdiction and Venue**

12. As Defendant's employee, the Relator was Billing Manager working directly for the BMH vice president for Revenue Cycle and closely with the Revenue Integrity Coding Manager; they were charged with the monitoring and updating Defendant's billing department, physician practices and coding for medical charge reimbursements from Medicare and Medicaid.

13. BMH is a 61-bed not-for-profit hospital located in Brattleboro, Vermont, employing physicians, nurses, support and administrative staff; the institution provides primary and acute medical care to more than 2,000 inpatients each year; its providers perform more than 2,500 surgical procedures a year.

14. BMH provides many medical and related services for area residents in the tri-state area that includes Vermont, Massachusetts and Maine.

15. Subject Matter Jurisdiction is proper under Diversity Jurisdiction because the parties reside in two different states and the amount in controversy exceeds $75,000. 28 U.S.C. §1332 and 31 U.S.C. §§ 3729 – 3733, *et seq.*

16. Venue is proper with this Court because under 28 U.S.C. § 1391 because the Defendant is located in Vermont.

**The Relator's Background and Expertise**

17. The Relator devoted her career to establishing and advancing accuracy in hospital billing practices, beginning in 2006 with the Franklin Memorial Hospital in Farmington, Maine and, later, at the BMH.

18. The Relator's professional expertise concentrates on hospital/clinical billing practices and systems.

19. The Relator served as a hospital billing supervisor for numerous clinical, patient financial services, third-party payer and self-pay procedures, and provider-based billing productivity systems auditing practices; she provided on sight training to Hospital Billing Departments, training on all Payers, follow up processes and all Billing functions. She provided management tasks in Maine, NH and VT, interim director of PFS for BMH and handled billing for all payers; she also provided credentialing and on-site biller training for many hospitals.

20. At BMH the Relator trained established and new billing staff, set up workflow processes, was director and manager for troubleshooting billing systems and became the director of operations, staff support and trainer for Maine Recovery Systems.

21. In 2020, the Relator became Medicare biller/trainer concentrating on Medicare billing and accounts receivables; trained all billers, reviewing denials, working with revenue integrity, repairing billing system issues; she reviewed adjustments over $500 and trained billers on appeal process, identifying deficiencies in Biller, Practice and Departmental processes and provided new procedures for them.

22. Later, BMH assigned the Relator to be the billing manager with responsibility for all billing processes, and Revenue Integrity Specialist and responsible for the billing team, cash posting, self-pay, liability and workers' compensation. She was responsible for all aspects of hospital billing including

billing and coding compliance with provider-based practices, departments within the facility and billing. She provided guidance on compliance throughout BMH under the direction of the previous VP of Revenue Cycle and CFO.

23. All facts alleged herein are based upon the personal knowledge of the Relator.

**COUNT ONE:**
**Defendant's False Claims Act Violations**

24. The Relator incorporates paragraphs 1-23 into this claim.

25. In general, both FCA's provide that any person who knowingly submits, or causes to submit, false claims to the government is liable for three times the government's damages plus a penalty that is linked to inflation.

26. Both FCA's proscribe: (1) presenting a false claim; (2) making or using a false record or statement material to a false claim; (3) possessing property or money of the U.S. and delivering less than all of it; (4) delivering a certified receipt with intent to defraud the U.S.; (5) buying public property from a federal officer or employee, who may not lawfully sell it; (6) using a false record or statement material to an obligation to pay or transmit money or property to the U.S., or concealing or improperly avoiding or decreasing an obligation to pay or transmit money or property to the U.S.; or (7) conspiring to commit any such offense.

27. In performing her duties to review and verify the accuracy and validity of claims of reimbursement from Medicare and Medicaid, the Relator discovered that BMH was claiming reimbursement for claims that were inaccurate and over-

charged Medicare and Medicaid for procedures and services, as well as patients via copays and or deductibles.

28. The violations encompassed a broad array of billing practices:

- Knowingly billing for services at a level of complexity higher than services provided or documented in the medical records;
- Knowingly billing for services not furnished, supplies not provided or both, including falsifying records to show delivery of such items;
- Knowingly ordering medically unnecessary items or services for patients;
- Paying for referrals of federal health care program beneficiaries;
- Billing Medicare for appointments patients fail to keep, defrauding the Federal Government and its programs and/or the Vermont False Claims Act; BMH was reporting to One Care, patients that received financial assistance due to lack of insurance when patients actually had Full VT Medicaid coverage.

30.The Relator protested the inaccurate and fraudulent over-charges to the BMH management and other violations.

31.BMH was aware of Relator's protests about the inaccurate and fraudulent over-charges to the BMH management.

32.In particular, the Relator protested inaccurate and fraudulent over-charges relating to physician and related clinical services allegedly for services provided by BMH but not rendered and/or billed in a manner that caused overcharging Medicare and Medicaid, ie, for x-rays, laboratory tests or drugs that were never dispensed and facility charges pertaining to provider-based billing with annual wellness examinations.

33.In many instances, BMH was "upcoding" for various medical procedures and/or services rendering them fraudulent claims for reimbursement from Medicare and Medicaid.

34.BMH knowingly submitted inaccurate and fraudulent claims.

35.BMH falsely certifies that it has complied with all relevant statutes and regulations related to the claims for reimbursement payments from Medicare and Medicaid as the certification is a prerequisite to qualify for the governments' reimbursements.

36.On information and belief, these practices continue to this day at BMH.

37.By virtue of the acts described above, Defendant knowingly presented or caused to be presented false and/or fraudulent claims to the United States Government for payment, approval and reimbursement in violation of 31 U.S.C. 3729(a)(1)(a).

38.The Relator requests that the United States and the State of Vermont intervene into this proceeding, investigate her claims.

39.The Relator also requests that the Court enter judgment against BMH and award her the monetary damages provided in the statutes including lost compensation and benefits, punitive damages, reimbursement for attorney's fees, costs, and such other monetary damages determined by the Court and/or the Jury.

## COUNT TWO: Illegal Retaliation Against the Relator as a Whistleblower under both FCA's

40.The Relator incorporates paragraphs 1-39 into this claim.

41. Both FCA's forbid retaliation against individual employee Whistleblowers who protest illegal practices related to fraudulent claims for reimbursement from Medicare and Medicaid.

42. Beginning in August 2022, with the arrival of a new chief financial officer, Jennifer Griffey, the Relator began expressing concerns about inept billing practices that resulted in overcharging Medicare and Medicaid for medical services as described above.

43. The Relator proposed remedies to tighten the billing process to eliminate the erroneous billing practices.

44. When Ms. Griffey and others resisted the Relator's recommended remedies for the erroneous billing practices, the Relator's concerns rose to protests about the billing practices; the disputes about billing practices continued for many months; in particular, Lorin Young, the new director of patient financial services, had no previous billing experience.

45. The Relator expressed concern that, in addition to violating Medicare and Medicaid billing procedures, the fraudulent billings also rendered patients at risk.

46. The Relator's protests were not based on mere reasonable belief that fraud was committed; rather, she had the expertise to recognize fraud and directly observed it.

47. Ms. Griffey expressed concerns about the Relator's "negativity" and cited her for "insubordination."

48. In early March 2023, the Relator requested a meeting with Ms. Griffey's and her staff to review the "serious" situation concerning BMH's billing practices; when

nobody responded, the Relator approached the BMH compliance officer and the chief executive officer for a "confidential meeting."

49. Finally, on March 10, 2023, BMH dismissed the Relator without providing a corrective action plan or any other disciplinary measure or any specific reason.

50. It was clear that BMH dismissed the Relator in retaliation for her protests concerning its practice of erroneous billing Medicare and Medicaid.

51. BMH fired the Relator because of her whistleblower complaints about its practice of erroneous billing Medicare and Medicaid.

52. Absent the Relator's complaints about BMH's fraudulent billing practices, there was no reason for its dismissal of the Relator; the "negativity" and "insubordination" that BMH cited were its pretexts for her compliance protests.

53. The Relator had been attempting internally, with BMH management, to cure and prevent it from participating in deliberate, illegal fraud against the federal and state governments.

54. In other words, BMH was on notice that she was attempting to bring BMH into compliance with Medicare and Medicaid procedures.

55. In essence, BMH refused to correct its illegal billing practices.

56. Defendant's conduct caused the governments to suffer considerable losses in revenue through false billings to Medicare and Medicaid that they paid to Defendant as reimbursements.

57. The federal and state False Claims Acts protect whistleblowing employees.

58. BMH's dismissal of the Relator in retaliation for her compliance complaints caused Relator to experience losses of compensation and benefits and related

damages to her career, in addition to causing her to suffer anxiety, humiliation, pain and suffering.

59. For the damage that BMH inflicted on her, the Relator demands judgment against BMH.

60. The Relator also demands, on behalf of the governments, reimbursement for the considerable losses they experienced because of Defendant's illegal billing practices and refusal to correct them.

61. The Relator requests that the governments intervene in this process to investigate and prosecute the Defendant's illegal activities described in this complaint.

62. The Relator also requests an award of damages for her whistleblower activities as is reasonable and provided in the statutes including lost compensation and benefits, punitive damages, reimbursement for attorney's fees, costs, and such other monetary damages determined by the Court and/or the Jury.

**COUNT THREE:**
**(VIOLATION OF VERMONT'S HEALTHCARE WHISTLEBLOWER STATUTE (21 V.S.A. § 507, et seq)**

63. Plaintiff incorporates paragraphs 1-62 into this claim.

64. BMH's conduct and actions violating the state Healthcare False Claims Act, referenced throughout this Complaint, also violated Vermont's HealthCare Whistleblower Statute in every dimension.

65. For the damage that BMH inflicted on her, the Relator demands judgment against BMH.

66. The Relator also demands, on behalf of the governments, reimbursement for the considerable losses they experienced because of Defendant's illegal billing practices and refusal to correct them.

67. The Relator requests that the governments intervene in this process to investigate and prosecute the Defendant's illegal activities described in this complaint.

68. The Relator also requests an award of damages for her whistleblower activities as is reasonable and provided in the statutes including lost compensation and benefits, punitive damages, reimbursement for attorney's fees, costs, and such other monetary damages determined by the Court and/or the Jury.

**COUNT FOUR:**
**WRONGFUL DISMISSAL FROM EMPLOYMENT**
**(BREACH OF PUBLIC POLICY)**

69. The plaintiff incorporates paragraphs 1-68 into this claim.

70. Vermont's public policy is defined by its statutes, judicial decisions and the common sense of the community to protect Vermonters from injury, monetary losses and even loss of life through false and fraudulent billings to the government.

71. Vermont's public policy encourages employees who discover their employer's illegal activities that disadvantage the government to come forward and report apparent fraud against the government.

72. Defendant's conduct caused injury to Vermonters in the form of considerable losses in revenue through false billings to Medicare and Medicaid that they paid through reimbursements.

73. The Vermont False Claims Act is an example of the public policy that protects whistleblowing employees who protest and report an employer's fraudulent billing to the government.

74. BMH's dismissal of the plaintiff was in retaliation for her compliance complaints and her to experience losses of compensation and benefits and related damages to her career, in addition to causing her to suffer anxiety, humiliation, pain and suffering.

75. Defendant's actions violated Vermont's public policy related to honesty in transactions with its government, specifically in seeking reimbursements for alleged Medicaid claims that were false and fraudulent.

76. For the damage that BMH inflicted on her, including loss of job, income and benefits, damage to her career, experiencing anxiety, pain and suffering, humiliation and depression, the plaintiff demands judgment against BMH.

77. The defendant also requests an award of monetary damages from defendant for her whistleblower activities as are reasonable and provided in the statutes; she specifically requests monetary damages including compensatory and punitive damages for defendant's reckless disregard of public policy and an award of court costs, reimbursement for reasonable attorney's fees and all other remedies the Court and/or Jury determine.

## Prayer for Relief

WHEREFORE, the Relator/Plaintiff, on behalf of herself and the United States of American and the State of Vermont, prays:

A. That this Court enter judgment under Counts One and Two against the defendant in an amount equal to three times the amount of the monetary damages the United States sustained because of the defendant's actions in violating the Federal False Claims Act, plus all applicable federal statutory penalties including lost compensation and

benefits, punitive damages, reimbursement for attorney's fees, costs, and such other monetary damages determined by the Court and/or the Jury.

B. That this Court enter judgment under Counts One and Two against the defendant in an amount equal to three times the amount of the monetary damages the State of Vermont sustained because of the defendant's actions in violating the Vermont False Claims Act, plus all applicable state statutory penalties including lost compensation and benefits, punitive damages, reimbursement for attorney's fees, costs, and such other monetary damages determined by the Court and/or the Jury.

C. That this Court enter judgment under Count Three against the defendant in an amount equal to the plaintiff's compensation and benefits losses plus punitive damages, court costs, reasonable attorney's fees and other monetary damages awarded by the Court or the Jury for defendant's violations of public policy protecting whistleblowers three or more times the amount of damages the State of Vermont sustained because of the defendant's actions in violating the Federal False Claims Act, plus all applicable federal statutory penalties including lost compensation and benefits, punitive damages, reimbursement for attorney's fees, costs, and such other monetary damages determined by the Court and/or the Jury..

D. That the Court find that BMH violated Vermont's common law public policy protecting whistleblowers and enter a judgment of behalf of the Relator/Plaintiff for wrongful termination in breach of the state's public policy protecting whistleblowers in general, should there be a determination that the False Claims Acts are inapplicable to the the Relator's statutory claims including lost compensation and benefits, punitive damages, reimbursement for attorney's fees, costs, and such other monetary damages determined by the Court and/or the Jury.

E. That the Court award monetary damages to the plaintiff for wrongful termination including lost compensation and benefits as well as punitive damages for BMH's disregard of the plaintiff's rights, anger at her for reporting its illegal acts against the state's public policy, together with punitive damages, reimbursement for attorney's fees, costs and other remedies determined by the Court or the Jury.

**The Plaintiff demands a Jury Trial of the Claims.**

Dated: January 24, 2024.

THE UNITED STATES OF AMERICA,
THE STATE OF VERMONT
*ex rel.* (Under Seal)
AND KATHY HARGREAVES,
THE RELATOR

By: s/s Norman E. Watts
Watts Law Firm PC
Relator's Counsel
P. O. Box 270
Quechee VT 05059
802-457-1020
Info@WattsLawVT.com